**SIGNED THIS: February 28, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **RANDALL LEROY WHITE** and | ) | No. 07-82171 |
| **JOAN IRENE WHITE,** | ) | |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

This matter concerns the narrow question of the meaning of the word "applicable" as used in 11 U.S.C. § 707(b)(2)(A)(ii)(I). For the following reasons, the Court determines that Congress used this adjective, which modifies "monthly expense amounts under the National Standards and Local Standards . . . issued by the Internal Revenue Service," as a directive to choose the correct amounts set forth in the tables that comprise those standards based upon the debtor's circumstances, not as a limitation on the availability of those amounts.

**BACKGROUND**

When they filed their Chapter 13 petition on October 2, 2007, the Debtors, Randall and Joan White (DEBTORS), owned two automobiles, a 2000 Chevrolet 1500 and a 2005

Ford Escape. The Ford is subject to a lien held by Patelco Credit Union but the Chevy is owned free and clear. On their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C), the DEBTORS, whose annualized current monthly income is above median, take an ownership expense deduction for the Ford as Vehicle 1 in the amount of $471.00 and for the Chevy as Vehicle 2 in the amount of $332.00.

The Standing Chapter 13 Trustee objects to confirmation, alleging that an ownership expense deduction for a vehicle owned free and clear is improper. As a result of the improper ownership expense deduction for the Chevy, says the Trustee, the Plan fails to meet the minimum payment threshold of Section 1325(b)(1)(B). The United States Trustee (UST) supports the Standing Trustee's objection.

In a Chapter 13 case, disposable income is determined by taking a debtor's current monthly income and subtracting amounts reasonably necessary to be expended for the maintenance or support of the debtor and the debtor's dependents, certain charitable contributions and certain business expenditures. 11 U.S.C. § 1325 (b)(2). For above-median debtors, expenses other than charitable contributions are determined in accordance with subparagraphs (A) and (B) of Section 707(b)(2). 11 U.S.C. § 1325 (b)(3). A debtor's basic living expenses are addressed in Section 707(b)(2)(A)(ii)(I), which provides in material part as follows:

> The debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse

>   of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. (Emphasis added).

The DEBTORS contend that the ownership expense deduction for the unencumbered Chevy is proper, relying upon *In re Moorman,* 376 B.R. 694 (Bankr.C.D.Ill. 2007) (Gorman, J.), where Judge Gorman determined that a debtor's "applicable" deductions are those that correspond to the debtor's date of filing, family size, geographic location, number of vehicles and the other factors set forth in the tables. 376 B.R. at 699. *Moorman* interprets "applicable," in the context of a debtor who must choose from among various alternative expense amounts, simply as a directive to the debtor to choose the ones that correspond to the debtor's circumstances, i.e., "pick the amounts that apply to your situation and disregard the ones that don't apply."

The Chapter 13 Trustee contends that a debtor is permitted to take an ownership expense deduction for a vehicle only if he owes money on the vehicle as of the filing date, whether in the form of secured debt payments or lease payments. So if a debtor is leasing a vehicle and still owes one or more lease payments when bankruptcy is filed or if the debtor has an unpaid balance on a loan secured by a vehicle at the time of the filing, he gets an ownership deduction. Under the Trustee's interpretation, such a debtor is entitled to the full amount of the IRS ownership expense for the duration of the plan, regardless of how small the remaining balance on the debt instrument or lease. The other side of that coin, argues the Trustee, is that where the vehicle is owned lien-free, the debtor may not take an ownership deduction.

The Trustee contends that BAPCPA's incorporation of the IRS expense standards necessarily included the instructions that accompany those standards. The instructions state that a taxpayer is not permitted an ownership expense unless he has an actual debt service or lease payment. The standards must be applied in bankruptcy the same as they would be by the IRS, argues the Trustee, so that a debtor who has no debt or lease payment does not receive an ownership deduction. The Trustee relies upon the IRS explanatory statement that the "transportation standards consist of nationwide figures for monthly loan or lease payments referred to as ownership costs." It follows that the ownership expense is not "applicable" unless the debtor has a car payment.

The UST filed a brief in support of the Standing Trustee's objection. In addition to reiterating the Standing Trustee's construction of the term "applicable," the UST contends that one of Congress's primary goals in enacting BAPCPA was to ensure that Chapter 13 debtors repay their creditors the maximum they can afford. This goal is furthered by disallowing the ownership deduction to debtors who are not making a car payment.

## ANALYSIS

With all due respect to Congress and apologies to Winston Churchill, discerning the intended function of the IRS expense allowances is like trying to solve a riddle wrapped in a mystery inside an enigma. At least three options readily present themselves:

1. The IRS expense amounts are fixed allowances, that are both an entitlement and a cap, whereby a debtor's actual expenditures, whether more or less than the IRS amounts, are disregarded.

2. The IRS expense amounts are a cap but not an entitlement, so that a debtor gets to deduct only the lesser of his actual expense or the IRS amount.

3. The IRS expense amounts are an entitlement but not a cap, so that a debtor gets to deduct the greater of his actual expense or the IRS amount.

4

**IRS Standards: cap or entitlement?**

The IRS Collection Financial Standards, part of the Internal Revenue Manual (IRM) promulgated by the IRS, begins as follows:

> Disclaimer: IRS Collection Financial Standards are intended for use in calculating repayment of delinquent taxes. These Standards are effective ... for purposes of federal tax administration only. Expense information for use in bankruptcy calculations can be found on the website for the U.S. Trustee Program.

The expense standards are divided into National Standards and Local Standards. The National Standards consist of five expense categories for food, housekeeping supplies, apparel and services, personal care products and services, and miscellaneous. The Local Standards provide expense amounts for housing and utilities, and transportation.

The amounts set forth in the National Standards vary according to income and household size. The amounts increase as a taxpayer's gross monthly income increases and as household size increases. According to the accompanying commentary, which is in the nature of a set of instructions to IRS field agents, the expense amounts in the National Standards are to be allowed as entitlements without regard to what is actually spent. In addition, taxpayers may claim a greater expense but must provide documentation to substantiate that extra expenses are necessary.

The Local Standards for housing and utilities expenses also increase by family size and vary in amount by the taxpayer's state and county of residence. The housing and utilities standards include allowances for mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, heating oil, garbage collection, telephone and cell phone expenses. Unlike the National Standards, the Local Standards

5

serve as a cap, as the taxpayer is allowed the standard amount, or the amount actually spent on housing and utilities, whichever is less. However, the taxpayer may claim a greater expense amount but must provide documentation to substantiate the extra amount as necessary. So the cap is merely presumptive.

Transportation expenses are more complicated. The Local Standards for Transportation are comprised of three components, a single national allowance for public transportation costs, a single national ownership cost allowance for one car and for two cars, and an operating cost allowance for one car and for two cars that varies by place of residence. Taxpayers with no vehicle are allowed the public transportation amount as an entitlement, without proof of use of public transportation. A taxpayer who owns a car and has a car payment receives an allowed operating expense and an ownership expense that operate as caps since the allowance is the amount actually spent or the standard, whichever is less. A taxpayer who owns a car but has no car payment receives only an operating expense allowance, not an ownership expense allowance.[1]

In summary, the National Standards, as used by the IRS, are entitlements. All taxpayers receive the benefit of an allowance for those expenses in the standard amount even if their actual expenditures are less, but with the possibility of substantiating a claim for a greater amount. The Local Standards for housing and utilities are used as a cap, as taxpayers get the lesser of actual expenses or the standard amount. It is only a presumptive cap, however, as they may substantiate a higher amount. The operating cost component of the Local Standards for Transportation is used by the IRS as a presumptive

---

[1] As other courts have noted, an additional operating expense of $200 is allowed such a taxpayer on a car that is over six years old and has reported mileage of 75,000 or more. *In re Ransom,* 380 B.R. 799 (9th Cir.BAP 2007).

cap, with the taxpayer allowed the lesser of actual expense or the standard. The ownership cost component also operates as a presumptive cap.

**Double Deduction Dilemma**

Under Section 1325(b), a Chapter 13 debtor's disposable income is determined by subtracting certain expenses from the debtor's current monthly income. In pertinent part, for above-median debtors, those expenses "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). That determination is to be made by performing the computations called for by clauses (ii), (iii) and (iv) of Section 707(b)(2)(A), providing for deductions for the IRS standard expenses, the debtor's average monthly payments on account of secured debts and a projected payment amount for all priority claims.

Read literally, Section 707(b)(2)(A)(i) requires the amounts determined under clauses (ii), (iii), and (iv) to be added together, with that sum then multiplied by 60. This provision allows deductions from a debtor's current monthly income for basic living expenses allowed by the IRS standards, for secured debt payments, and for priority debt payments. The double deduction dilemma arises from the inclusion in the IRS standards of deductions for vehicle ownership expenses and for home mortgage payments. Counting these expenses as allowances under clause (ii) and as actual secured debt payments under clause (iii) would be double counting, almost certainly an unintended, even absurd, result. *See* 6 COLLIER ON BANKRUPTCY ¶ 707.05[2][c][i] (15th ed.rev.). The double deduction dilemma was addressed in the drafting of the means test forms.

The Committee on Rules of Practice and Procedure of the Judicial Conference of the United States promulgated the means test forms, Official Form 22A, Statement of Current Monthly Income and Means Test Calculation (Chapter 7), and Official Form 22C, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Chapter 13). In doing its work, the Committee necessarily addressed the relationship between the IRS expense allowances and a debtor's actual expenditures for a house payment and a car payment.

Under Official Form 22C, an above-median debtor is allowed to deduct, as a starting point, each of the standard expense amounts specified in the IRS National and Local Standards. If he owes a debt secured by his home or car, he must subtract the average monthly payment amount from the standard amount, thereby yielding a "net" expense. That reduction is inconsequential, however, as the debtor is subsequently allowed to deduct, separately, the full amount of the average monthly debt service payment for the house and car. When all is said and done, the debtor gets to deduct the IRS amount or the amount of his actual house and car payments, whichever is larger.

After much head scratching, the Court is convinced that this interpretation is the one that follows most readily from a careful reading of the statute. This Court agrees with the Rules Committee and those courts that interpret the statement in Section 707(b)(2)(A)(ii)(I) that "the monthly expenses of the debtor shall not include any payments for debts," to mean that a debtor's actual car payment and actual house payment must be deducted from the IRS standard allowance for housing and utilities and for vehicle ownership expense for purposes of clause (ii). A separate deduction for the full amount of those actual expenses

8

is then permitted under clause (iii). In resolving the double deduction dilemma, the means test forms allow the debtor to deduct the greater of his actual house and car payment or the IRS standard amount, a result in direct contradiction to the IRS usage of the housing and utilities, and vehicle ownership deductions as presumptive caps, allowing only the lesser of the standard or the actual payment amount.

The Rules Committee's resolution of the double deduction dilemma bolsters the DEBTORS' position. The Committee did not consider itself bound by the IRS usage. If the IRS rule of allowing only the lesser of the standard or the actual car payment had been adopted, it would follow that a debtor with no car payment should not get an ownership deduction. Instead, Form 22C allows a debtor the benefit of the full standard allowance if it exceeds the amount of his actual car payment, thus treating the ownership expense as an entitlement. As an entitlement, it should be available to all debtors who own a car.

**Internal Revenue Manual**

Some courts have considered the IRS Internal Revenue Manual (IRM) as an aid to interpret Section 707(b)(2)(A)(ii)(I) and the term "applicable." *See In re Talmadge,* 371 B.R. 96, 100-01 (Bankr.M.D.Pa. 2007); *In re Slusher,* 359 B.R. 290, 308-09 (Bankr.D.Nev. 2007); *In re Oliver,* 350 B.R. 294, 301 (Bankr.W.D.Tex. 2006); *In re Carlin,* 348 B.R. 795 (Bankr.D.Or. 2006). Other courts take the position that it is inappropriate to consider the IRM as an interpretive aid. *See Moorman,* 376 B.R. at 697-98; *In re Sawdy,* 362 B.R. 898, 912-13 (Bankr.E.D.Wis. 2007); *In re Barrett,* 371 B.R. 855, 858-59 (Bankr.S.D.Ill. 2007); *In re Chamberlain,* 369 B.R. 519, 525 (Bankr.D.Ariz. 2007); *In re Swan,* 368 B.R. 12, 18

(Bankr.N.D.Cal. 2007); *In re Farrar-Johnson,* 353 B.R. 224, 231 (Bankr.N.D.Ill. 2006); *In re Fowler,* 349 B.R. 414, 418 (Bankr.D.Del. 2006); *In re Demonica,* 345 B.R. 895, 902 n.8 (Bankr.N.D.Ill. 2006).

This Court agrees with the latter line of cases. The statute refers only to the "monthly expense amounts specified under the . . . Standards." It does not expressly incorporate by reference the instructions or commentary portion of the IRM. Most of the courts that use the IRM as an aid find that the explanatory text is *implicitly* incorporated into Section 707(b)(2)(A)(ii)(I). By incorporating the expense standards into the Bankruptcy Code, they reason, Congress must have intended that the application of those standards in bankruptcy be identical to how they are used by IRS field agents for tax collection purposes.

That reasoning does not hold up under close scrutiny. The Financial Analysis handbook portion of the IRM provides informal, flexible guidelines designed to give guidance to field agents negotiating with taxpayers to resolve tax collection issues. The IRM is in the nature of an internal agency rule that is not enforceable against the IRS. *U.S. v. Michaud,* 860 F.2d 495, 499 (1st Cir. 1988); *Groder v. U.S.,* 816 F.2d 139, 142 (4th Cir. 1987). *See, also*, *Estate of Shapiro v. C.I.R.,* 111 F.3d 1010, 1017 (2nd Cir. 1997) (IRS interpretive rules, or general statements of policy, procedure or practice, do not have the force and effect of law and are not binding on IRS). Moreover, the purpose to which the guidelines are put by the field agents is significantly dissimilar from their purported use in bankruptcy because the bankruptcy policies that underpin Chapter 13 are not present in a tax collection negotiation. *See Moorman,* 376 B.R. at 697. Additionally, as indicated above, the IRS itself

does not use the Standards in a single uniform manner – some are entitlements while others are presumptive caps. Further, the uncapped deduction for secured debt payments permitted under clause (iii) of Section 707(b)(2)(A) is contrary to the IRM guidelines pertaining to vehicle ownership and housing expenses, which allow a taxpayer only the lesser of the local standard or the actual payment amount. Finally, the term "applicable" when contrasted with the subsequent term "actual," is indicative of an intent to disregard the debtor's actual circumstances when determining the debtor's "applicable monthly expense amounts specified under" the Standards. *See, e.g., Farrar-Johnson,* 353 B.R. at 230-31; *Barrett,* 371 B.R. at 858.

These factors militate strongly against the implicit incorporation of the IRM into the Bankruptcy Code. It is highly unlikely that Congress would elevate a non-mandatory internal IRS guideline, created by an agency with no regulatory authority in bankruptcy, to the status of federal bankruptcy law, and would not do so explicitly but through the obtuse vehicle of the term "applicable." That argument assumes too much to accept. Instead, it is much more likely that Congress intended to incorporate only the expressly referenced "monthly expense amounts," i.e., the numbers set forth in the Standards, unadorned by any IRS accoutrements.

**Policy Arguments**

The Chapter 13 Trustee suggests that allowing a debtor with no car payment to deduct the IRS standard allowance would be absurd. The Court disagrees. As other courts have recognized, a likely purpose of incorporating the IRS expense standards into the Bankruptcy Code was to make the means test analysis in Chapter 7 and the disposable

11

income analysis in Chapter 13 more uniform on a national basis by eliminating variations in expenses allowed from trustee to trustee and from court to court. *See, Moorman,* 376 B.R. at 699; *In re Lindstrom,* 381 B.R. 303, 308 (Bankr.D.Colo. 2007). The use of fixed expense allowances levels the playing field for debtors. It is far less defensible from a policy perspective for a debtor with one car payment remaining at the time of filing to get the full standard deduction for the 60-month term of the Chapter 13 plan, while a debtor who paid off the secured debt before filing gets no deduction whatsoever.

The UST contends that because a primary goal of BAPCPA was to ensure that debtors repay creditors the maximum they can afford, a debtor without a car payment should not be allowed an ownership deduction. In the context of an over-median Chapter 13 debtor, the UST's premise is false. Pre-BAPCPA, all Chapter 13 debtors had to justify their actual expenses as reasonable and necessary. Luxury car payments were often disallowed or reduced. BAPCPA changed that paradigm to one where over-median debtors are allowed to deduct their secured debt payments without regard to reasonableness or necessity, and are allowed the IRS standard deductions even where they actually spend less.[2] Over-median debtors are treated far more favorably with respect to expense allowances under BAPCPA.

**Conclusion**

The Court rejects the position advocated by the Chapter 13 Trustee and the UST, that the term "applicable" was intended to implicitly incorporate the IRM directive to IRS field agents not to permit an ownership deduction without a car payment. This Court

---

[2] Under-median debtors remain subject to a "reasonably necessary" expense standard without reference to the IRS expense allowances. 11 U.S.C. § 1325(b)(2).

agrees with Judge Gorman in *Moorman*, that the most natural reading of the term "applicable," in the context of the IRS standard expense tables, is as a directive to the debtor to choose the amounts that correspond to his particular circumstances. The better interpretation is that an ownership expense deduction for a debtor who owns a vehicle but owes no lease or finance payment is nevertheless permissible.

    This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###